Rowe
*v.*
The Granite Bridge Corporation.

## The Inhabitants of MEDWAY *versus* The Inhabitants of MILFORD.

In an action between two towns, it appeared that paupers having their settlement in the defendant town, received support and medical attendance in the plaintiff town, and within thirty days after notice of that fact from the plaintiffs, the defendants made a contract with a person living in the plaintiff town, at whose house the paupers were, to keep them at the defendants' expense, and made provision for medical attendance ; which the defendants made known immediately to one of the overseers and one of the selectmen of the plaintiff town, and proposed to settle with them for the relief already furnished ; whereupon the overseer and selectman made out a bill, charging the defendants at the rate of one dollar a week for each of the paupers, and an item for the funeral expenses of one of them, and the overseer receipted it and received the amount of it from the defendants. The paupers not being afterwards removed by the defendants before the expiration of the thirty days, the plaintiffs brought an action to recover the full amount of the expenses incurred by them ; but it was *held*, that the settlement made by the parties was a bar to the plaintiffs' claim.

ASSUMPSIT to recover the expenses incurred by the plaintiffs for the support &c. of Asia Madden and his family, amounting to $ 232·25.

Upon a case stated it appeared, that Madden's settlement was in Milford. On the 25th of December, 1837, he and his family were taken ill and were in need of relief in Medway, where they lived.

On the 28th of December the overseers of the poo of Medway sent a notice in writing, which was received by the overseers of Milford on the same day, stating that Madden and his wife and two children, whose settlement was in Milford, were in Medway, sick and on expense, and that the expense

Medway
v.
Milford.

would be charged to Milford until their removal, and requesting the overseers of Milford to remove them immediately.

On the 24th of January, Mr. Clark, one of the overseers of Milford, and Mr. Davenport, one of the selectmen of that town, in consequence of the notice, went to Medway and found Madden and his family at Joseph Desper's, where they met the attending physician. They there made an agreement with Desper to keep Madden and his family, and agreed with the physician to attend them at the charge of Milford after that time. The agreement with Desper was in writing and in the following terms :—" Medway, January 24, 1838. This certifies that the overseers of the poor of the town of Milford have this day agreed with the subscriber to be accountable to him for all the expenses that may accrue for the support of the family of Asia Madden from this date.    Joseph Desper."

After this arrangement was made, Clark and Davenport saw Mr. Adams, one of the overseers of Medway, and Mr. Hunt, one of the selectmen, and told them that they had come to settle with the town of Medway for keeping Madden and his family, and showed the above paper, signed by Desper. Hunt and Adams thereupon made out an account, which was as follows :—

Medway, Jan. 24, 1838

| Town of Milford to the town of Medway, | Dr. |
|---|---|
| To support of Asia Madden and wife and one child from Dec. 25th to Jan. 24th, being 4½ weeks, each at $1      -      -      -      -      - | 13·50 |
| To support of one of Madden's children from Dec. 25 to Jan. 2, being 1½ week, at $1      -      - | 1·50 |
| To funeral charges of one child      -      -      - | 5·00 |
| | $20·00 |

Clark paid Adams the above sum at that time, and Adams receipted the account.

The family were removed from Medway on the 3d of February, and as soon as it was thought safe by the physician, and the expenses of their support from January 24th to their removal, including physician's services, were paid by Milford according to the arrangement made with Desper.

Upon these facts a nonsuit or default was to be entered, according as the Court should be in favor of or against the plaintiffs' recovering.

The case was argued in writing.

*Metcalf*, for the plaintiffs. Nothing appears in the facts agreed, that shows any adjustment between these parties tantamount to a settlement by compromise.

*Non constat* but that the defendants' liability to a further charge was left open for future consideration. It is not denied by the plaintiffs, that the facts show that they knew, on the 24th of January, that the paupers were not then removed. But the facts do not show that they then knew that the paupers would not be removed before the 27th of January. If they had been removed on the 26th of that month, the plaintiffs would have had no further claims on the defendants ; for the removal within thirty days after notice deprives the town which furnishes support, of a reimbursement beyond the sum of one dollar per week. All therefore, which was *certainly* due when payment was made, was received by the plaintiffs ; and no discharge was expressly given of any sum above twenty dollars. Nor can such discharge be implied from the transactions of January 24th.

The receipt given by Adams was for twenty dollars, made up of the items in the bill rendered. At least, this is all that can warrantably be inferred from the statement of facts. But if the receipt had been " in full of all demands for the support of the paupers," the defence would not thereby have been strengthened. *Lyman* v. *Clark*, 9 Mass. R. 235 ; *Payler* v. *Homersham*, 4 Maule & Selw. 423. When a party is informed that his receipt must discharge the whole demand, without reference to the exact sum that might prove to be due, doubtless he is bound and barred. *Holbrook* v. *Blodget*, 5 Vermont R. 520. But a receipt, *per se*, is no evidence of a contract ; it is evidence only of payment, (*Stackpole* v. *Arnold*, 11 Mass. R. 32,) and though it be expressed to be in full, yet it is open to explanation and even to contradiction. If given under a mistake, either of facts, or of legal rights, it does not bar a recovery of what remains due. *Thompson* v. *Faussat*, 1 Peter's C. C. Rep. 182 ; *Lawrence* v. *Schuylkill Navigation Co.*, 4 Wash. C C. Rep. 562.

<div style="margin-left:auto">Medway<br>v.<br>Milford.</div>

A promise to accept less than is due is not binding; and acceptance of less is not a discharge. *Fitch* v. *Sutton*, 5 East, 230 ; *Harrison* v. *Close*, 2 Johns. R. 448.

Neither Hunt nor Adams, nor both, as agents of the plaintiffs, had authority to discharge the defendants on receiving less than was due, even if they had undertaken so to do. *Lewis v. Gamage*, 1 Pick. 347 ; Paley on Agency, *ch.* 3, *pt.* 2, § 6. But they made no such attempt. They received all that it was then certain that the plaintiffs would ever be entitled to, and gave a receipt for that sum only. Subsequent events show that a further sum is due, and the plaintiffs ask the Court to send the case to an auditor to determine the amount.

*E. Washburn*, (of Worcester,) for the defendants.

*Feb. term 1839.*

Shaw C. J. delivered the opinion of the Court. By the Revised Statutes, c. 46, § 15, it is provided, that where a pauper is relieved in one town, who has a settlement in another, the former shall not receive more than one dollar per week, provided that the town liable for the support of the pauper shall remove such pauper within thirty days after receiving legal notice that such support has been furnished.

This was but the revision of a former statute to the same effect, upon which some judicial decisions have been had. In *Ware* v. *Wilbraham*, 4 Pick. 45, it was held that a town, to avail itself of this partial exemption, or exemption from greater expense, must have actually removed the pauper, and that it was not enough that the pauper had voluntarily removed into another town within the thirty days. One reason assigned for this construction was, that towns might have an inducement, by the partial exemption, to admit the settlement of their paupers, when the truth required it, and save the expense of litigation. And an actual removal would be such an admission.

In *Seekonk* v. *Attleborough*, 7 Pick. 155, it was again held, that actual removal was a condition precedent, which must be strictly performed, to entitle the town to the exemption of the statute ; and therefore, that when the town liable had admitted the settlement, had made preparation to remove the pauper, but were prevented from doing so by his sickness, and had made a contract with persons to support the pauper at their expense, within the town which had before relieved him, it did not

entitle the town to the exemption, and that such town was bound to pay the actual expense though exceeding one dollar a week.

The law therefore must now be considered as well settled upon that point, and must be taken to be well known and understood by those who are conversant with the subject. In the present case, it appears that Madden and his family were settled in Milford and were rel'eved by Medway, and that the latter gave notice thereof to the former. Within thirty days, one of the overseers of Milford, accompanied by one of the selectmen, went to Medway, entered into a contract with Desper, at whose house the paupers were, to keep them at the expense of Milford, and also for their medical attendance. They then met one of the overseers and one of the selectmen of Medway and showed them the contract and proposed a settlement for the relief already furnished. Whereupon the agents of Medway made out a bill charging the support at the rate of one dollar per week, and an item for funeral expenses of one deceased, and the agents of Milford paid it, and took a receipt. The plaintiffs now contend, that as they in fact incurred a greater expense than one dollar a week, as the defendant town did not in fact remove the paupers within thirty days, the contingency did not happen, upon which they were limited to one dollar per week ; that what was received, ought to be considered as received on account, and not in full, and that they are now entitled to recover the full price. On the contrary, the defendant town contends, that the settlement was deliberate and voluntary, and therefore conclusive.

The Court are of opinion, that under these circumstances, the settlement must be deemed conclusive. It does not appear that the parties acted under any mistake of law or facts ; they knew their respective rights, a price was charged on one side and paid on the other, deliberately and voluntarily, without any misrepresentation or concealment ; it was made without any exception or reservation, it covered the whole claim now made, and therefore must be deemed conclusive. The argument is, that in the contingency which actually happened, the paupers were not removed, and therefore the plaintiffs might recover more. But it does not follow, that if this settlement

had not been made, the defendant town might not have attempted to remove the paupers, and therefore changed the contingency. At all events, the settlement took away all inducement to make further inquiries, as to the practicability and safety of such a removal  If the officers of the plaintiff town supposed that they could not be removed, then they knew that they would not be limited to the price of one dollar by the operation of the statute ; and they must be presumed to have fixed the price, and made the settlement, with that knowledge.   Whether it be the fixing of a price, and compensation for an uncertain claim, or whether it be considered as the compromise of a doubtful or questionable claim, made with a view to all the circumstances, being made deliberately, and cautiously, and by authorized agents, the town is barred by it.   The town of Medway incurred no expense for the paupers after this settlement, and therefore they had no cause of action when this suit was commenced.

It has been argued as if this was a plain case of taking part instead of the whole of an acknowledged debt.   This assumes that more was due, which is the question in controversy.   It is not enough to show that the plaintiff had incurred a greater expense.   What was due from one town to the other, depended upon a different principle.   The law did not hold the defendants to a reimbursement of the whole which the plaintiffs had been obliged to pay, but only upon certain contingencies. The agents of the towns sat down, not to compromise an admitted claim, by paying and receiving a part for the whole ; but in the exercise of their judgment, to determine what was the amount due.   And what they agreed upon, under these circumstances, was the whole amount due, and that being paid, discharged the whole claim.

*Plaintiffs nonsuit.*